**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Courtney Gardner,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>            Defendant. | No. CV-21-02192-PHX-DJH<br><br>**ORDER** |

At issue is the denial of Plaintiff Courtney Gardner's Application for Supplemental Security Income ("SSI") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14), Defendant Social Security Administration Commissioner's Response Brief (Doc. 15), and Plaintiff's Reply Brief (Doc. 16). The Court has reviewed the briefs, Administrative Record (Doc. 13, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 39-48) and affirms the ALJ's decision for the reasons addressed herein.

**I.    BACKGROUND**

Plaintiff protectively filed an application for SSI on April 8, 2019, for a period of disability beginning on November 1, 2018.[1] (R. at 39). Plaintiff's claims were denied initially on July 10, 2019, and upon reconsideration on September 27, 2019. (*Id.*) Plaintiff testified before an ALJ in a telephone hearing about her claims on December 7, 2020. (*Id.*)

---
[1] Plaintiff later amended her alleged onset date to April 8, 2019, during the hearing.

The ALJ denied her claims on February 10, 2021. (R. at 39-48). On October 19, 2021, the Appeals Council denied her request for review of the ALJ's decision. (R. at 2-7). On December 22, 2021, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of traumatic fractures status-post pedestrian versus truck MVA, including sacrum (pelvic) fracture, thoracic vertebra compression fractures, left clavicle fracture, displaced pilon fracture of left tibia/fibula, compound left ankle fracture; open wound to left heel status-post skin grafting; complex regional pain syndrome; and, status-post multiple surgical operations. (R. at 41).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 48). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 42). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 416.967(a)" with certain function limitations and concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 42, 47).

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id*. To determine whether substantial evidence supports a decision, the court must consider the

record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. Generally,, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a) — 416.920(e). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Court presumes the parties are familiar with the five-step process, so it need not be repeated here.

**III.   ANALYSIS**

Plaintiff raises one argument for the Court's consideration and that is whether theALJ properly considered the assessment of treating physician, Dr. Kenneth Levy, M.D. (Doc. 14 at 1).

**A. The ALJ properly considered the medical opinion evidence of Dr. Levy.**

Plaintiff suggests that the ALJ erred in assessing Dr. Levy's opinion. (Doc. 14 at 6-14). Plaintiff applied for disability benefits after March 27, 2017, and is subject to the new regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[2]

The regulations define "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2). All "other medical evidence" that an ALJ considers as part of the Administrative Record is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3).

The new regulations also expand the definition of acceptable medical sources. "Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502 (d). The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* Yet,, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how

---

[2] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

- 4 -

persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792.

In the present case, Dr. Levy submitted a check-box questionnaire noting Plaintiff's limitations. (R. at 46, 1137). Dr. Levy opined that Plaintiff could not work, could only sit for one hour and could stand for about one hour in an eight-hour workday; however, both movements could only be performed in fifteen-minute increments. (R. at 1137). Dr. Levy further found that Plaintiff could never stoop, but occasionally bend and balance, and she would need to elevate her legs most of the time during an eight-hour workday. (R. at 46, 1137). Dr. Levy's opinion suggested that Plaintiff could never lift, could occasionally lift her left arm over shoulder level and her right arm frequently overhead, frequently perform fine manipulation with both hands and gross manipulation with her right hand, but could never perform gross manipulation with her left hand. (R. at 1137). Despite the conditions Dr. Levy placed on Plaintiff with gross manipulation, he found Plaintiff could frequently operate a motor vehicle, and opined that she suffers from only moderate pain. (R. at 1137). The ALJ found these restrictions are inconsistent with the record, and the check-box form was not supported by any significant explanation or narration by Dr. Levy. (R. at 46). "We have held that the ALJ may 'permissibly reject []…check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (citations omitted).

Additionally, as Plaintiff pointed out, Dr. Levy's treatment notes are handwritten and largely illegible and do little to support his opinion on the check-box form he submitted on behalf of Plaintiff. (Doc. 14 at 9). Plaintiff attempts to bolster Dr. Levy's opinion by suggesting that because Plaintiff was simply seen in his office after the date of her accident and provided courtesy copies of reports from other treating physicians, that gives supportability to his check-box opinion. (Doc. 14 at 10). Plaintiff's argument is misplaced. Dr. Levy saw Plaintiff in his office on November 30, 2018, for an initial follow-up from the accident. (R. at 901). He does not see Plaintiff again until March 28, 2019, for a follow-

up of her fractures. (R. at 899). Dr. Levy's notes are not decipherable and there is no way to discern what his medical opinion entails. Plaintiff is not seen again until September 12, 2019, for eye problems which appear to be unrelated to the accident. (R. at 1966). A visit on October 18, 2019, for lab results is noted but it is unclear if Plaintiff saw Dr. Levy. (R. at 1964). There is a November 4, 2019 follow-up visit for lab results of GERD/reflux issues with a treatment note filled out by someone other than Dr. Levy. (R. at 1956). The only reference to Plaintiff's accident at this visit was a note that she told the examiner she was starting physical therapy. (R. at 1956). Finally, there was a visit on February 3, 2020, for eye problems and B12, with no indication that this was related to the accident and again includes an unreadable treatment note. (R. at 1953). Dr. Levy's medical notes do not appear to proffer any support for his check-box opinion, and the revised regulations do not require the ALJ to provide special deference to Dr. Levy.

The ALJ further evaluated Dr. Levy's opinion based upon the consistency factor and found his opinion was inconsistent with the record, "which overall indicated that the [Plaintiff] had significant improvement within a fairly short period after her injuries and has required minimal continued care." (R. at 46). The ALJ' supports his findings by noting that Plaintiff's post-operative appointments generally showed her wounds were healing and she was progressing as expected with only physical therapy ordered for her general after-care. (R. at 44). Medical records indicated that Plaintiff was hit by a vehicle while crossing the street in November 2018 which required several procedures for her injuries and a skin graft. (R. at 44). However, by January 2019, Plaintiff was out of her cast and wearing a CAM boot. (R. at 44, 991). The ALJ noted that most of Plaintiff's examinations were normal, and she appeared to be in no acute distress, alert and oriented, exhibited no neurological deficits, normal motor functioning and sensation. (R. at 44, 993, 996, 1006, 1959-63). Plaintiff had normal range of motion to her right lower extremity; however, her left lower extremity had limited range of motion with some tenderness, but she was able to ambulate normally. (R. at 44, 1006, 1961). Plaintiff argues that the ALJ misrepresented the record with these findings because she had to be put under anesthesia to remove a cast and

manipulate her left ankle. (Doc. 14 at 10-11). However, Plaintiff asserts this argument in error as the ALJ specifically referenced n Plaintiff's physician's finding that "she essentially is impossible to examine" and anesthesia was required to improve her ankle position because she was resistant to treatment. (R. at 44, 983-84, 988).

Furthermore, imaging in April 2019 showed Plaintiff's left ankle fracture was healed and her doctor cleared her to return to normal activity. (R. at 44, 943, 1002). She was attending physical therapy, using her CAM boot and took it off several times a day while at home. (R. at 44, 1000, 1109). In June 2019, Plaintiff was discharged from physical therapy at her request due to her own personal concern regarding the skin graft, even though her surgeon found it was healed and she could return to normal activity. (R. at 943-44, 1016). Plaintiff later returned to physical therapy and reported that she stopped using crutches by July 2019. (R. at 45, 1935). Plaintiff made improvements with physical therapy to include range of motion, body mechanics and soft tissue mobility. (R. at 45, 1861-62). Although Plaintiff experienced some mild swelling and pain when on her feet for too long, she was able to manage her pain with over-the-counter medication such as ibuprofen. (R. at 45, 1000, 1942, 1961). The ALJ's decision notes that despite the Plaintiff's post-accident impairments, she performed daily activities that consisted of attending to her personal care and needs, household chores, shopping in stores, reading, watching television, visiting with family, taking care of her son and dog, and daily meal preparation, although it took longer. (R. at 45, 263-68, 271-78).

Considering the above factors, the ALJ found that Dr. Levy's opinion lacked support in the medical record and was unpersuasive. The Court agrees. Ultimately, Plaintiff takes issue with the ALJ's interpretation of the evidence and asserts that her interpretation of the evidence is a better alternative. But "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The ALJ's interpretation in this case is rational and the Court upholds the ALJ's decision.

Plaintiff's final arguments assert that she was not "improved" enough to be capable

of light work, and the ALJ failed to give specific and legitimate reasons which has frustrated meaningful review. (Doc. 14 at 13-14). The Court finds these arguments are without merit. The ALJ did not find that Plaintiff was capable of light work but made a more restrictive RFC finding of sedentary work which the ALJ specifically discussed would account for Plaintiff's subjective complaints and the objective medical evidence. (R. at 45). The ALJ made further accommodations for Plaintiff within the RFC finding by limiting the amount of time she can stand/walk and sit, made allowances to alternate between standing and sitting positions, adjusted her work day for a percentage of time off-task, and other postural and environmental limitations as needed. (R. at 42-43). Finally, as was previously discussed, the Court no longer requires an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion. It is clear to the Court that the ALJ cited to specific examples in the medical record that were inconsistent with Dr. Levy's opinion of Plaintiff's limitations. The ALJ fully articulated how persuasive he found all the medical opinions from each source. It is apparent from the record that the ALJ provided substantial evidence to sufficiently support his decision.

## IV. CONCLUSION

The Court finds that substantial evidence supports the Commissioner's nondisability determination. The medical opinion evidence of record was properly considered and reviewed. Therefore, the Court finds that substantial evidence exists to support the Commissioner's nondisability determination.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 26th day of April, 2023.

Honorable Diane J. Humetewa
United States District Judge